

ATTORNEYS AT LAW
341 CONKLIN STREET
FARMINGDALE, NY  11735

TELEPHONE  516-586-8513
FACSIMILE    516-586-8517
www.cmlawfirm.com

CALIFORNIA
FLORIDA
GEORGIA
INDIANA
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON

WRITER'S DIRECT ACCESS
rnovitz@cmlawfirm.com

January 10, 2023

Hon. Judge Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  **Lewis v. GB Sneakers Inc. et al**
     **21-CV-04712-KAM-PK**

Dear Judge Kuo:

This office represents the defendants in the above referenced matter.  We were directed to file this correspondence in support of our request for approval of the settlement agreement reached between the parties.  As you are aware, Plaintiff is pro se.  As such, we are writing on behalf of both parties.  The parties submit that the Court should approve the Settlement Agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter.

The settlement was originally negotiated during a mediation between the parties with counsel and mediator, Philip Goldstein, through the EDNY Panel.  Plaintiff's original complaint only made claims per the FLSA and NYLL.  We entered a mediation and settled the matter in June of 2022.  Plaintiff then had a dispute with his attorney who withdrew as counsel.  Plaintiff was dissatisfied with the settlement as it did not contain any settlement amount for his additional claims not plead in his complaint, including claims of harassment, discrimination, wrongful termination and fraud.  Without admitting to any liability as to those claims, Defendants, in an effort to settle the case and not risk Plaintiff bringing a separate action which Defendants would again have to defend, Defendants agreed to add an additional amount to the already agreed to settlement which is incorporated in the settlement agreement.  A copy of the agreement is attached hereto.

{SECURE Firm/70001/00081/SETTDOCS/03859983.DOCX }

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant;" (2) "a likelihood that the claimant's circumstance will recur;" (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region;" and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." Id. at 336 (citations omitted). Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Zeltser v. Merrill Lynch & Co., 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted). Applying these factors, Plaintiff suggests that they weigh strongly in favor of settlement approval.

There is no dispute regarding Plaintiff's regular hours or pay. The only dispute herein involved Plaintiff's overtime hours. Plaintiff was employed with Defendants for a period of three years from May, 2017 until March, 2020. In light of the difficulties associated with establishing Plaintiff's overtime hours, as well as Plaintiff's desire to avoid future legal proceedings, the settlement amount reached here is reasonable.

Courts consider settlements fair and reasonable when, as is the case here, they consider the potential risks of litigation. See e.g., Martinez v. Hilton Hotels Corp., 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); Garcia v. BAE Cleaners Inc., 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.
Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. Lliguichuzhca, 948 F. Supp. 2d at 366; Zeltser, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length

negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). While Plaintiff and his attorney had a disagreement about the settlement after the negotiations, Plaintiff himself did agree to the original terms of the settlement for the FLSA case, it was not until he wanted the additional causes of action to be submitted in the case that the dispute arose. As such with regard to the FLSA portion of the case, the negotiations were between experienced wage-and-hour litigators and an experienced mediator who exchanged multiple demands and offers of settlement with Defendants before settling on the terms of this proposed FLSA settlement. Additionally, Plaintiff had many sessions with Your Honor to discuss the settlement terms. The Settlement Agreement reflects the conclusion on the part of all parties that the terms were a fair and reasonable assessment of their respective risks.

Other factors present do not weigh against a settlement. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

### Attorney's fees

As the defense counsel I do not have a copy of the retainer agreement or know of the amount of hours worked, however, given the settlement amount and fact that Plaintiff's prior attorney is only receiving less than 15% of the total settlement amount, is reasonable since 33 1/3% of a settlement is a standard arrangement in this District, and is routinely approved by courts in this Circuit, particularly for attorneys with relevant experience and expertise. See, e.g., Cortes v. New Creators, Inc., 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with 'contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting Najera v. Royal Bedding Co., 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); Mireku v. Red Vision Sys., Inc., 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); Garcia v. Pancho Villa's of Huntington Village, Inc., 2012 U.S. Dist. LEXIS 144446, at *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Finally, we point out that, while *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), does not allow for a general release of Plaintiff's claims, here, circumstances require a general release. In addition to Plaintiff's FLSA and NYLL case, the settlement agreement is based upon Plaintiff representation that he will bring additional claims against the Defendants. However, Plaintiff has not indicated in detail what those additional claims are. Without the benefit of an attorney to articulate the claims he intends to bring with any detail, it

was imperative that a general release be included which will prevent Plaintiff from bringing any additional claims against the Defendant in the future. The only concern Plaintiff has is that he wants to make sure the release does not prevent him from bringing an action against his attorney, Lawrence Spasojevich , Esq. who represented him in this case. Additionally, pursuant to Cheeks, we have not included a confidentiality claim.

    For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                        Respectfully Submitted,
                        **CRUSER, MITCHELL, NOVITZ,**
                        **SANCHEZ, GASTON & ZIMET, LLP**

                        */s/ Rondiene E. Novitz*

                        Rondiene E. Novitz, Esq.

# SETTLEMENT AGREEMENT AND RELEASE

GB SNEAKERS, INC. GURSON SNEAKERS INC AND BALBIR SIDANA, (collectively "Defendants"), and NYRON LEWIS ("LEWIS"), desire to avoid the costs, risks, and delays associated with litigation and therefore agree as follows:

1. **Definition of Parties.**

    a. "Plaintiff" shall be defined as NYRON LEWIS

    b. Plaintiff NYRON LEWIS was employed by GB SNEAKERS, INC. GURSON SNEAKERS INC AND BALBIR SIDANA

    c. Defendants" shall be defined as GB SNEAKERS, INC. GURSON SNEAKERS INC AND BALBIR SIDANA

    d. "Action", "Lawsuit" or "Claims" refers to the lawsuit filed by Plaintiff against Defendant on August 20, 2021, in the United States District Court, Eastern District of New York, with Civil Action #: 1:21:cv:047212-KAM-PK and any additional claims which Plaintiff has advised he intends to amend his complaint to include or commence a new action to include which are but not limited to wrongful termination, discrimination, harassment, and fraud.

2. **Consideration.** In consideration for Mr. Lewis's signing this Agreement and the release of all claims stated above, Defendants agree to make the following payment totaling One Hundred Seventeen Thousand Five Hundred and Twenty-Six ($117,526) Dollars inclusive of attorneys fees and costs.

    a. A check made payable to "NYRON LEWIS" in the amount of One Hundred Thousand Dollars ($100,000.00) for all claims as full and complete satisfaction for his claims for liquidated damages and emotional distress damages. Such Amount shall be reported on an IRS Form 1099:

        i. FLSA/NYLL Statutory damages: $10,000
        ii. FLSA/NYLL Liquidated damages: $10,000
        iii. FLSA/NYLL Unpaid OT and wages: $50,000
        iv. Interest: $ 0.00
        v. All other claims: Emotional Distress damages for additional claims not previously plead: $30,000.

due within thirty (30), days of court approval of this settlement agreement and mailed to Mr. Nyron Lewis directly at 649 East 104th Street, Brooklyn, New York 11236;

    b. A check made payable to "Aidala, Bertuna & Kamins, P.C.," in the amount of Seventeen Thousand Five Hundred Twenty-Six Dollars and Zero Cents ($17,526.00), representing any and all attorneys' fees, disbursements and costs due within thirty (30), days of court approval of this settlement agreement which will be mailed to the office of

Plaintiff's prior counsel Aidala, Bertuna & Kamins, P.C. Attn: Lawrence Spasojevich, Esq. 546 5th Avenue, 6th Floor, New York, New York 10036. Aidala, Bertuna & Kamins, P.C. shall receive IRS Froms 1099 relating to such payments.

        c.      Lewis understands and agrees that the Defendants are providing him with no tax or legal advice and make no representation regarding tax obligations or consequences if any, related to this Agreement. Lewis acknowledges that he has had the opportunity to consult with counsel of his choosing about the tax obligations or consequences, if any, related to this Agreement. Lewis and Defendants have endeavored in good faith to allocate appropriately the payment set forth herein, and the Defendants have relied on Lewis' claims and representations regarding the allocations.

    3.    **Mailing Disclaimer:** Without discharging the Releasees from their ultimate obligation to ensure the full Settlement Payment is delivered to and received by Plaintiff, the Parties agree that the Releasees will be considered to have fulfilled their obligations regarding timely issuance of the Settlement Payment by submitting the checks listed herein, together with appropriate packaging and postage, to either the custody and control of a United States Postal Service employee, a United States Postal Service Mailbox, or any other receptacle authorized for receipt of United States Postal Service Mail, on or before the deadline for issuance of the Settlement Payment as contemplated herein. The Parties agree that any delay in delivery of the Settlement Amount that is caused by, or may be attributed in whole or in part, to any act or omission of the United States Postal Service or other mail carrier, shall toll the deadline for issuance of the Settlement Amount as contemplated herein, and shall not be considered a breach of this agreement on behalf of the Releasees in any way.

    4.    **Indemnification.** Plaintiff agrees to indemnify and hold Defendants and Released Parties harmless against any and all attorneys' fees, tax liabilities, fines, penalties, claims, damages and costs, including reasonable attorneys' fees that Defendants may incur because of Plaintiff's failure to pay taxes on the Settlement Payment.

    5.    **No Consideration Absent Execution of This Agreement.** Plaintiff understands and agrees he would not receive the monies and/or benefits specified in Paragraph 2 above, except for his execution of this Agreement and the discontinuance of the Action with prejudice.

6. **Release of Claims by Plaintiff**. In return for the payments identified in paragraph 2, Plaintiff knowingly and voluntarily releases and forever discharges GURSON INC., GB SNEAKERS, INC., GURBANI, INC. GURSON SNEAKERS INC., BALBIR SIDANA, CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP and United States Liability Insurance Company, (hereinafter referred to as Released Parties) and each of its respective past, present, and future owners, parents, divisions, subsidiaries, partnerships, and other related entities (whether or not they are wholly owned); (b) the past, present, and future owners, trustees, fiduciaries, administrators, shareholders, directors, officers, partners, agents, representatives, members, associates, employees, , insurers, and attorneys of each entity listed in subpart (a) above; and (c) the predecessors, successors, and assigns of each entity or individual listed in subparts (a) and (b) above.

Lewis fully and forever releases, relieves, waives, relinquishes, and discharges for himself and for his heirs, estate, spouse, child or children (if any), attorneys, representatives, executors, administrators, successors, assigns, and agents, the Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, disbursements, expenses, attorneys' fees, damages, causes of action, claims and demands, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which he had, now has or may have had against the Released Parties, arising out of, by reason of, or relating in any way whatsoever to any matter, cause, or thing from the beginning of the world to the date on which he executes this Agreement, including, but not limited to: (i) those arising directly or indirectly from his employment with the Defendants and the terms and conditions of such employment or the separation therefrom; (ii) claims arising, under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, Sections 1981 through 1988 of Title 42 of the United States Code, the Pregnancy Discrimination Act, the Employee Retirement Income Security Act of 1974, the Immigration Reform and Control Act, the Occupational Safety and Health Act, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Workers Adjustment and Retraining Notification Act, and any parallel state or local laws, the Family and Medical Leave Act, the Fair Labor Standards Act, the New York Human Rights Law, N.Y. Exec. Law §§ 290-301 *et seq.*, the New York Whistleblower Laws, N.Y. Lab. Law §§ 740 and 215, the New York Labor Laws, the New York Equal Rights Law, N.Y. Civ. Rights Law §§ 40-C to 45, the New York State Employment Relations Act, N.Y. Lab. Law § 700 *et seq.*, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, the New York City Gender Motivated Violence Act, N.Y.C. Admin. Code § 8-903-6, and the constitutions of the United States and New York; and (iii) any other common law or statutory claim, whether for moneys or wages owed, damages, negligent supervision and retention, constructive or wrongful discharge, breach of contract, promissory estoppel, whistleblower protection, intentional or negligent infliction of emotional distress, assault, battery, defamation, fraud, fraudulent inducement, costs, attorneys' fees, expenses or otherwise, arising prior to and on the date on which he executes this Agreement. Excepted from the release of claims described in this Paragraph are any claims or rights which cannot be waived by law, any claims to enforce this Agreement, or any obligations arising under this Agreement. For the avoidance of doubt, any and all claims, debts, liabilities, demands obligations, guarantees, costs, disbursements, expenses, attorneys' fees, damages, causes of action, claims and demands, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which Lewis had, now has, or may have against the Released Parties are waived and/or released by execution of this

Agreement which resulted from Lewis' claims or violations and the consequences thereof consistent with *Cheeks v. Freeport Pancake House, Inc.* 796 F.3d 199 (2d Cir. 2015). Lewis acknowledges that as a result of the payments described herein, he has been fully and properly paid for all hours worked.

  a) Lewis further agrees that he waives any and all entitlement to relief, including, but not limited to, monetary damages or equitable relief, with respect to any claim or cause of action released
  b) Lewis affirms that he has been paid any and all wages, bonuses, commissions, other compensation, and benefits to which he may or could have been entitled from the Defendants and that no other things of value are due to him.

7. **Acknowledgments and Affirmations**. Plaintiff affirms that in the Action he has asserted a claim in seeking unpaid wage or overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis and affirms that there is a bona fide dispute as to such FLSA claims which are being settled and released by this Agreement. Plaintiff acknowledges that while the FLSA claims were settled, Plaintiff then, for the first time made new allegations alleging new claims which were not contained within the Summons and Complaint filed in Federal Court, however, all parties agreed we would be best served to settle all claims rather than risk a new action or amended action to be filed. As such, Defendants agreed to pay additional amounts based upon the allegations not yet asserted in the complaint to settle all potential claims in addition to the FLSA claims asserted. Plaintiff believes that this settlement is fair and reasonable, and will seek from the Court approval of the settlement as fair and reasonable under the FLSA, as well as all other claims alleged and seeks dismissal of the Action with prejudice.

8. **Governing Law and Interpretation**. This Agreement shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict or choice of law provisions. In the event the Plaintiff or Defendant breaches any provision of this Agreement, Plaintiff and Defendant affirm that either may institute an action to specifically enforce any term or terms of this Agreement. If the release language is found to be illegal or unenforceable, Plaintiff and Defendant agree to execute a binding replacement release(s).

9. **Amendment**. Except as provided in Paragraph 6 above, this Agreement may not be modified, altered or changed without the express written consent of both parties wherein specific reference is made to this Agreement.

10. **Resolution of Disputes**. The parties agree that the Court in this action shall retain jurisdiction to resolve any disputes arising out of this Settlement Agreement and the settlement of this action.

11. **Non-admission of Wrongdoing**. Defendants expressly deny any wrongdoing related to the allegations in the Litigation including any violations of the FLSA and NYLL. Defendants expressly deny any additional wrongdoing not asserted in the complaint but what is being released herein. The parties have agreed that it is in their mutual interest to avoid further costs of litigation to resolve fully and finally all of their disputes asserted and not asserted in the litigation upon the terms and conditions more fully set forth herein The parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by either party of any liability or unlawful conduct of any kind.

12. **Entire Agreement**. This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties. Plaintiff acknowledges he has not relied on any representations, promises, or agreements of any kind made to him in connection with decision to accept this Agreement, except for those set forth in this Agreement, and Plaintiff's consent to this Agreement is given freely, voluntarily, and with full knowledge and understanding of this Agreement's contents.

13. **Section Headings**. Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

14. **Legal Fees**. Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

15. **Joint Participation in Preparation of Agreement**. The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

16. **Competency to Waive Claims**. At the time of considering or executing this Agreement, Mr. Lewis was not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Mr. Lewis is competent to execute this Agreement.

17. **Dismissal of Litigation.** The Parties agree that, upon executing the Agreement, the Parties, shall execute a Stipulation of Discontinuance, with prejudice, of the Litigation, with each party bearing its own fees and costs, in the form annexed hereto as Exhibit "A". The parties agree that defendant's counsel will hold the Stipulation of Discontinuance in escrow and will not file the Stipulation of Discontinuance with the Court unless and until the Court issues an Order approving the Agreement in its entirety, at which time Defendants' counsel may file the Stipulation of Discontinuance with the Untied Stated District Court, without further notice.

18. **Voluntary Settlement**. The parties hereby represent and warrant that they have entered into this Agreement of their own free will and accord. The Parties further represent

and warrant that they have reviewed every term of the Agreement with counsel of their choosing; that the terms of this agreement have been translated to each Party in his or her native language, if appropriate; and that by executing this Agreement, the parties fully understand each term included herein and every right and obligation attributed to any Party under this agreement.

19. **Effective date.** This agreement will become effective once the Plaintiff and Defendants fully execute.

20. **Medicare/Medicaid Information.** The parties intend to comply with the Medicare Secondary Payer Act (42 U.S.C. §1395y) and to protect Medicare's interests, if any, in this settlement. The Releasor understands and agrees that as used herein, the term "Medicare" includes Medicare Part A (Hospital Insurance), Medicare Part B (Medical Insurance), Medicare Part C (Medicare Advantage Organizations) and Medicare Part D (Prescription Drug Insurance). Releasor has not been identified as a Medicare or Medicaid recipient and the Releasor hereby expressly represents and warrants that Medicare or Medicaid has not made any payments to or on the Releasor's behalf as a result of or in any way related to the injuries alleged in the Claim.

The Releasor acknowledges, however, that if Releasor received benefits that have or may have been paid by an insuring entity affording benefits payable for medical care and/or treatment, as further consideration and inducement for this settlement, Releasor agrees to defend, indemnify, protect and hold harmless Defendants from any and all liens, rights of subrogation, indemnification claims, contribution claims, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorneys' fees, whatsoever made by or sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits providers, workers compensation carrier, Medicare, Medicaid, or any other entity arising in whole or in part out of the care and treatment, or in any way connected to the care and treatment, provided to the Releasor for the injury/injuries alleged in the Claim.

In addition to the Release and Discharge set forth above and in consideration of the payments set forth in this Agreement, the Releasor hereby waives any cause of action and/or Private Cause of Action under 42 US Code §1395y (b)(3)(A), and releases and forever discharges Defendants from any obligations, from any claim, known or unknown, arising out of the failure of Defendants to provide for a primary payment or appropriate reimbursement pursuant to 42 US Code §1395y (b)(3)A).

The Releasor agrees to indemnify, defend and hold harmless Defendants for any claim, loss or payment Defendants may suffer, including judgments, verdicts, awards, penalties, attorney's fees and costs, that arises out of the failure to pay any unpaid medical bills or future medical expenses, or to otherwise fail to protect Medicare's interests under the MSP Act which exceed the amounts set forth in the final letters issued by these agencies. The Releasor agrees by this Agreement to waive any claims for damages, indemnification and/or contribution from any causes of action of any kind or nature, including but not limited to a private cause of action provided in the Medicare Secondary Payer (MSP) Act, 42 U.S.C. Section 1395y(b)(3)(A), in connection with or arising as a result of the medical care and treatment rendered to the Releasor regarding the injuries alleged in the Claim

It is understood and agreed that NYRON LEWIS will provide the United States Liability Insurance Company all of the information noted below and all information required by United States Liability Insurance Company to properly report this claim to Medicare pursuant to 42 U.S.C. 1395y(b)(8). NYRON LEWIS further agrees that United States Liability Insurance Company will provide the information below and all information required under 42 U.S.C. 1395y(b)(8) to The Centers for Medicare and Medicaid Services pursuant to The Medicare, Medicaid and SCHIP Extension Act of 2007.

Full Name as it appears on your Social Security Card
_Nyron H. Lewis_

Address
_649 East 104th Street_

Medicare Health Insurance Claim Number (HICN)
_[signature]_

Social Security Number
_[redacted]_

Date of Birth
_[redacted]_

Gender
_Male_

------------------------------------
NYRON LEWIS

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement and Release as of the date set forth below:

*Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.*

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

**PLAINTIFF:**
NYRON LEWIS

_[signature]_

Date: _1-6-23_

**DEFENDANT:**
GB SNEAKERS, INC.
GURSON SNEAKERS
BALBIR SIDANA

_Balbi E Eilano_ [signature]

By: Balbir Sidana

Title _Pres._

Date: _01-06-2023_

STATE OF NEW YORK

COUNTY OF NASSAU

On the ____6th_____ day of ___January_____, 2023_____, before me personally appeared

_____NYRON  LEWIS_____, to me known to be the person(s) named herein and who executed the foregoing Settlement Agreement and Release and acknowledged to me that he voluntarily executed the same.

_____
Notary Public

ELISABET DORFMAN
Notary Public, State of New York
NO. 01DO6204413
Qualified in Nassau County
Commission Expires April 20, 2025